## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Charles James Jones,<br><br>　　　　　Defendant. | Case No. 14-cr-148 (DWF/LIB)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Julie E. Allyn and Kevin S. Ueland, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Shannon R. Elkins, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415; and John C. Conard, Law Offices of John C. Conard, 7582 Currell Boulevard, Suite 212, Woodbury, MN 55125, for Defendant.

SUSAN RICHARD NELSON, United States District Judge[1]

## I.    INTRODUCTION

Before the Court are six Motions in Limine filed by the Government [Doc. Nos. 70, 71, 92],[2] and twelve Motions in Limine filed by Defendant Charles James Jones [Doc. Nos. 69, 76, 77].  Also before the Court is the Government's memorandum seeking to preclude Defendant's proposed jury instruction regarding intoxication [Doc. No. 78].  A pre-trial conference was held in this matter on February 25, 2015.  For the reasons set forth below,

---

[1]　　　Judge Nelson is trying this case on behalf of Judge Frank.

[2]　　　The Government's Motion in Limine No. 6:  To Preclude Improper Defense Expert Testimony or, in the Alternative, for a <u>Daubert</u> Hearing [Doc. No. 74], will be addressed in a separate Order.

the Court grants in part, denies in part, denies as moot in part, and defers its ruling on in part, the pending Motions.

## II.    DISCUSSION

### A.    Legal Standards

A district court is accorded discretion in its evidentiary rulings.  United States v. Battle, 774 F.3d 504, 512 (8th Cir. 2014) (citation omitted).  In this case, the parties have moved to exclude several pieces of evidence as irrelevant, prejudicial, improper attacks on character, and hearsay.  The following legal standards apply.

### 1.    Relevance and prejudice

Under Federal Rule of Evidence 401, "[e]vidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  To determine whether evidence is relevant, the Court looks first to what must be proven at trial and then asks whether the evidence in question tends to support or refute one of those issues.  See United States v. McCorkle, 688 F.3d 518, 521 (8th Cir. 2012).  Under Rule 402, evidence that is not relevant is not admissible.  Fed. R. Evid. 402.  And, Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

## 2.    Character evidence

According to Rule 404(a), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404.  Similarly, under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  "To admit evidence under Rule 404(b), the evidence must (1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value." United States v. Farish, 535 F.3d 815, 819 (8th Cir. 2008) (citation and internal quotation marks omitted).

## 3.    Hearsay

Under Federal Rule of Evidence 801, a "statement" is considered hearsay if it is "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(a), (c).  A "'[s]tatement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).  Under Rule 802, hearsay is not admissible at trial unless permitted by a federal statute, the Federal Rules of Evidence, or other rules promulgated by the U.S. Supreme Court. Fed. R. Evid. 802.

**B.      The Government's Motions in Limine**

  **1.      Motion to preclude the defense, in the presence of the jury, from offering or referring to hearsay statements of Defendant**

In its Motion in Limine No. 1, the Government seeks to preclude the defense, in the presence of the jury, from offering or referring to hearsay statements of Defendant.  (Govt.'s Mots. in Limine Nos. 1–4 [Doc. No. 70] ("Govt.'s MIL Nos. 1–4") ¶ 1.)  At the pre-trial conference, the Government explained that it intends to offer evidence of statements made by Defendant to law enforcement officials at the time of his arrest on December 30, 2013 and on December 31, 2013, but not any statements made by Defendant to law enforcement officials on January 1 and 2, 2014.  The Government argued that Defendant's counsel cannot refer to statements of Defendant not introduced by the Government because such statements constitute impermissible hearsay.  In response, Defendant's counsel stated her intent to refer only to the fact that an interview occurred on January 1, 2014, and not to refer to the substance of the interview.  However, she argued that she should be able to ask the law enforcement officials whether they believed Defendant was impaired on January 1, for purposes of comparing Defendant's demeanor on that day to his demeanor on December 30, 2013.

In its supplemental briefing on this issue, the Government demonstrated that the law enforcement officials with whom Defendant spoke on December 30, Officers Sweere and Skoog, have previously testified that Defendant appeared to be under the influence of drugs on December 30.  (Supplemental Mem. in Supp. of Govt.'s Mot. in Limine No. 1 to Preclude Hearsay Evid. [Doc. No. 89] at 4.)  The Government also argued that Officer

Skoog had multiple encounters with Defendant prior to December 30, 2013 and Defendant's counsel can, therefore, elicit the desired testimony regarding Defendant's demeanor on December 30 by asking about prior contacts rather than post-December 30 statements.  (Id. at 4–5.)

The Court agrees with the Government.  Because the law enforcement officials have conceded that Defendant appeared to be under the influence of drugs at the time of his arrest on December 30, 2013, and because the officials have had prior contact with Defendant with which they may compare his demeanor on December 30, Defendant's counsel need not make reference to the statements made by Defendant on January 1 and 2, 2014. Accordingly, the Court grants the Government's Motion.

**2.     Motion to limit defense cross-examination of any witness regarding prior bad acts or convictions of the witness or references thereto**

In its Motion in Limine No. 2, the Government seeks to limit defense cross-examination of any witness regarding prior bad acts or convictions of the witness to only those matters permitted under Rules 608 and 609 of the Federal Rules of Evidence. (Govt.'s MIL Nos. 1–4, ¶ 2.)  The Government also seeks to preclude Defendant from referring to any alleged prior bad act or conviction of a witness in the presence of the jury until the Court has determined the propriety of the proposed cross-examination or the admissibility of the proffered evidence.  (Id.)

The Court will defer ruling on this Motion until specific instances arise at trial. However, counsel for both the Government and Defendant are ordered to approach the bench for a ruling prior to eliciting such testimony or offering such evidence.

### 3.      Motion to sequester potential witnesses except case agents

In its Motion in Limine No. 3, the Government seeks to have potential witnesses,

except case agents, sequestered.  (Govt.'s MIL Nos. 1–4, ¶ 3.)  At the pre-trial conference,

counsel for Defendant stated that the defense has no objection to this request.  Accordingly,

this Motion is denied as moot.

### 4.      Motion to preclude Defendant, in the presence of the jury, from referring to the potential penalty Defendant faces if convicted

In its Motion in Limine No. 4, the Government seeks to preclude Defendant, in the

presence of the jury, from referring to the potential penalty he faces if convicted of the

offense alleged in the Indictment.  (Govt.'s MIL Nos. 1–4, ¶ 4.)  At the pre-trial conference,

counsel for Defendant stated that the defense has no objection to this request.  Accordingly,

this Motion is denied as moot.

### 5.      Motion to preclude "reverse" 404(b) evidence

In its Motion in Limine No. 5, the Government asks this Court to preclude

Defendant from testifying that Shalonda Clark frequently fell asleep with a lit cigarette.

(See Govt.'s Mot. in Lim. No. 5 [Doc. No. 71] ("Govt.'s MIL No. 5") at 1.)  The

Government claims that testimony about Ms. Clark falling asleep with a lit cigarette is

inadmissible character evidence under Rule 404.  (See id. at 2.)  Specifically, the

Government argues that the evidence constitutes "bad acts" that are being offered solely

to prove that Ms. Clark acted in accordance with those bad acts on the night that she died.

(See id.)  Defendant, on the other hand, argues that such evidence is admissible because it

is relevant, demonstrates a "pertinent trait," and shows a "habit."  (See Def.'s Mem. of

Law Regarding Govt.'s Mot. to Preclude Rule 404(b) Evid. [Doc. No. 90] ("Def.'s Rule 404(b) Resp.") at 3–8.)  Defendant also argues that this evidence is not evidence of a "bad act" precluded by Rule 404(b), but that even if it were, it falls under an exception to that Rule because it demonstrates opportunity or identity.  (See id. at 8–10.)  Defendant asserts that he must be allowed to introduce this evidence in order to present a complete defense.  (See id. at 10–12.)

The Court finds that testimony about Ms. Clark falling asleep with a lit cigarette is admissible under Federal Rule of Evidence 406 if Defendant can properly lay the foundation that Ms. Clark had a habit of falling asleep with a lit cigarette.  If Defendant cannot lay the proper foundation to establish habit, the Court holds that this evidence about a third party is not necessarily prohibited by Rule 404(b), but is nonetheless inadmissible under Rule 401 and Rule 403.

### a.      Rule 406 Analysis

If Defendant correctly lays the foundation to establish that Ms. Clark had a "habit or routine" of falling asleep with a lit cigarette, then this testimony is admissible pursuant to Rule 406.  See Fed. R. Evid. 406 (stating that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice").  As Rule 406 states, this Court "may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness."  Id.  Nonetheless, "habit or pattern of conduct is never to be lightly established."  See Williams v. Sec. Nat'l Bank of Sioux City, Iowa, 358 F. Supp. 2d 782, 812 (N.D. Iowa 2005) (citing Wilson v. Volkswagen of Am., Inc., 561

F.2d 494, 511 (4th Cir. 1977)).  It is only when examples offered to establish such pattern

of conduct or habit are "numerous enough to base an inference of systematic conduct,"

that examples are admissible.  Wilson, 561 F.2d at 511 (citing Strauss v. Douglas Aircraft

Co., 404 F.2d 1152, 1158 (2d Cir. 1968)); see also 2 Wigmore, Evidence § 376 (3d ed.

1940).  Therefore, if Defendant establishes that on numerous specific instances Ms. Clark

fell asleep with a lit cigarette, or that she consistently fell asleep with a lit cigarette, then

Mr. Jones need not corroborate his testimony further.

### b.      Reverse Rule 404(b) Analysis

Contrary to the Government's argument, the Court finds that Defendant's

proffered evidence about Ms. Clark is not clearly subject to Rule 404(b).  The

Government contends that Defendant should not be permitted to testify that Ms. Clark

had fallen asleep with a lit cigarette in the past.  (See Govt.'s MIL No. 5 at 2.)

Specifically, the Government argues that this evidence constitutes evidence of Ms.

Clark's past bad acts and is therefore excludable reverse 404(b) evidence.  (See id.)

A majority of circuit courts have held that Rule 404(b), which prohibits the

admission of other acts as propensity evidence, does not apply if a defendant offers other

act evidence of a third party to prove some fact relevant to his defense.  See, e.g., United

States v. Morano, 697 F.2d 923, 926 (11th Cir. 1983) (holding that "Rule 404(b) does not

specifically apply to exclude . . . evidence [that] involves an extraneous offense

committed by someone other than the defendant [because] the evidence was not

introduced to show that the defendant has a criminal disposition . . . so the policies

underlying Rule 404(b) are inapplicable"); United States v. Gonzalez-Sanchez, 825 F.2d

8

572, 583 (1st Cir. 1987) (holding that "Rule 404(b) does not exclude evidence of prior

crimes of persons other than the defendant"); United States v. Sepulveda, 710 F.2d 188,

189 (5th Cir. 1983) (holding that Rule 404(b) only applies to acts by the defendant

individually); United States v. Stevens, 935 F.2d 1380, 1401–06 (3d Cir. 1991) (allowing

a defendant to introduce "other crimes" evidence against a third party under Rule 404(b)

because "prejudice to the defendant is no longer a factor"); United States v. Blum, 62

F.3d 63, 68 (2d Cir. 1995) (stating that Rule 404(b) permits "admission against third

parties of evidence of 'crimes, wrongs or acts' if used to show 'motive, opportunity,

intent, preparation, plan, knowledge, identity of absence of mistake or accident'") (citing

United States v. Aboumoussallem, 726 F.2d 906, 911–12 (2d Cir. 1984)).  But see

Agushi v. Duerr, 196 F.3d 754, 760 (7th Cir. 1999) (holding that Rule 404(b) "does apply

to third parties"); United States v. McCourt, 925 F.2d 1229, 1232 (9th Cir. 1991)

(holding that, "because Rule 404(b) plainly proscribes other crimes evidence of a person,

it cannot reasonably be construed as extending only to an accused") (internal citations

and quotation marks omitted).

　　　　The Eighth Circuit has not spoken directly on this issue.  Nonetheless, in United

States v. Battle, the Eighth Circuit held that the lower court had not abused its discretion

by ruling to exclude the reverse 404(b) evidence of a third party's other acts.  See 774

F.3d 504, 513 (8th Cir. 2014).  The Battle court explained that the defendant suggested

that the court should consider the usual 404(b) factors "with less concern for prejudice

because evidence offered against someone other than the defendant does not raise a risk

of prejudicing the jury against the defendant."  Id.  The defendant also argued that the

court would still be required to "weigh other Rule 403 considerations, such as whether the evidence will mislead the jury or waste time," when deciding whether to admit the alleged 404(b) evidence. Id. The Eighth Circuit "[a]ssum[ed] without deciding that [the defendant's] suggested method of analysis [was] correct," and even when considering the usual 404(b) factors with less concern, the Battle court held that "the district court [had] not abuse[d] its discretion in excluding this evidence." Id. Therefore, although the Eighth Circuit has not explicitly held that Rule 404(b) is not applicable to evidence regarding acts of someone other than the defendant, it has, at the very least, accepted for the purpose of argument that the prohibitions of Rule 404(b) may concern a court less when the evidence is offered against a third party to prove some fact relevant to the defendant's defense, because it does not raise the risk of prejudicing the jury against the defendant. See id.

The Government relies on United States v. Peneaux, No. CR 13-30188-RAL, 2014 WL 7691569 (D.S.D. Oct. 7, 2014). (See Govt.'s MIL No. 5 at 4–5.) In Peneaux, the district court held that evidence that the victim had burned food while drunk in the past and had passed out before with a lit cigarette was inadmissible under Rule 404(b). See 2014 WL 7691569, at *3. However, the Court finds that Peneaux is distinguishable for at least three reasons.

First, the defendant in Peneaux did not appear to argue that the victim had a "habit" of passing out with a lit cigarette or had a "habit" of burning food when drunk, pursuant to Rule 406. Rather, the defendant solely argued that evidence that the victim burned food while drunk was admissible under Rule 404(b) to show the identity of who

10

may have started the fire.  See id. at *3.  In contrast, here, Defendant claims that evidence

about Ms. Clark habitually falling asleep with a lit cigarette is admissible under Rule 406.

The Peneaux court did not at all discuss how the defendant's evidence would fare under

Rule 406, nor did it discuss whether the defendant had the foundation to establish that the

victim had a habit of burning food or passing out with a lit cigarette.

Second, the Peneaux court explained that because it was already permitting the

defendant to introduce evidence that the victim was drunk and burned food on the night

of the alleged offense, then additional evidence about the victim burning food on prior

occasions was only probative to show that the victim had a propensity to engage in this

behavior.  See id.  In this case, unlike in Peneaux, additional evidence or testimony is not

independently being offered to prove that Ms. Clark fell asleep with a lit cigarette in her

mouth on the night of the alleged offense.  Therefore, the probative value of Ms. Clark's

habitual conduct is particularly relevant in this case, as Defendant will rely on it to prove

that Ms. Clark likely "acted in accordance with the habit or routine" of falling asleep with

a lit cigarette.  See Fed. R. Evid. 406.

Third, in Peneaux, the defendant solely posited that the victim may have started

the fire in the kitchen while cooking, but the defendant did not contend that the victim

started the fire by passing out with a cigarette in his hand.  See 2014 WL 7691569, at *1.

Therefore, in Peneaux, the district court did not need to consider whether evidence of the

victim passing out with a lit cigarette was proof of a different source of the fire, or an

opportunity for the fire to begin.  In contrast, here, Defendant seeks to present evidence

about Ms. Clark's habit of falling asleep with a lit cigarette for the purpose of presenting

an alternative source of the fire.  (See Def.'s Rule 404(b) Resp. at 10.)

As the Eighth Circuit has not ruled on this issue, the Court applies the majority

reverse 404(b) rule to this case and finds that Rule 404(b) does not necessarily prohibit

the admissibility of evidence that Ms. Clark fell asleep with a lit cigarette because it is

evidence offered against a third party, and is offered to show an alternate source of the

fire.  In other words, it is offered to prove a fact that is relevant to Mr. Jones's defense.

### c.        Rule 401 and Rule 403 Analysis

Even applying this majority reverse 404(b) rule, the Court may nonetheless

exclude testimony that, in the past, Ms. Clark fell asleep with lit cigarettes, if the Court

finds that this evidence is irrelevant, under Rule 401, or is prejudicial or could mislead

the jury, under Rule 403.  See Fed. R. Evid. 401; Fed. R. Evid. 403; Stevens, 935 F.2d at

1405 ("[A] defendant may introduce 'reverse 404(b)' evidence so long as its probative

value under Rule 401 is not substantially outweighed by Rule 403 considerations.").

Here, Defendant only seeks to admit testimony that on some occasions in the past,

Ms. Clark fell asleep with a lit cigarette.  In order for the proffered evidence to be

relevant under Rule 401, it must have a tendency to make a fact more or less probable.

See Fed. R. Evid. 401.  However, Defendant does not claim that he saw Ms. Clark fall

asleep with a lit cigarette on the night of the fire.  In fact, Defendant does not even claim

that Ms. Clark was smoking cigarettes on the night of the fire, or that, for instance,

pharmacological evidence exists demonstrating that she had nicotine in her system.  (See

Def.'s Rule 404(b) Resp. at 10.)  Without this type of critical connection, Defendant fails

to demonstrate the relevance of the fact that Ms. Clark had, in the past, fallen asleep with lit cigarettes.  Therefore, Defendant fails to meet his burden under Rule 401.

As the evidence about Ms. Clark is not clearly relevant under Rule 401, the Court also finds that, pursuant to Rule 403, admitting this testimony would be substantially more prejudicial than probative.  See Fed. R. Evid. 403.  Although it is the jury's role, as opposed to the Court's, to determine the reliability of Defendant's testimony, see Perry v. New Hampshire, 132 S. Ct. 716, 728 (2012), "[i]rrelevant evidence is not admissible," Fed. R. Evid. 402.  If Defendant's proffered evidence is admitted, then the jury may erroneously believe that the Court considered the evidence to be substantially relevant or proof that Ms. Clark fell asleep with a lit cigarette on the evening she died.  See Util. Control Corp. v. Prince William Constr. Co., 558 F.2d 716, 721 (4th Cir. 1977) (explaining that the fact that the defendant "once previously executed an express guarantee hardly proves that thereafter he executed another contract as guarantor . . . However, the possibility is real that the jury might have thought differently.  It may well have concluded that because the court admitted the evidence, the court thought that the evidence had substantial relevancy.").  Accordingly, pursuant to Rules 401 and 403, the Court will not admit Defendant's expected testimony about Ms. Clark if the evidence is insufficient to establish habit under Rule 406.

In sum, the Court finds that if Defendant adequately provides foundation for Ms. Clark's habit of falling asleep with a lit cigarette, then this testimony is admissible under Rule 406.  The Court notes that Defendant must present this testimony on direct examination, and is not permitted to raise this evidence for the first time by questioning

13

others on cross-examination about Ms. Clark's alleged habit or past acts.  In addition, in order to prevent the prejudicial effect of the jury hearing testimony that the Court may ultimately determines does not satisfy Rule 406, Defendant must first establish foundation for the alleged habit evidence outside the presence of the jury.  If the Court is satisfied that the evidence is admissible pursuant to Rule 406, then Defendant may proceed to offer the testimony at trial.  If Defendant cannot establish habit, then— although the proffered evidence likely is not prohibited by Rule 404(b)—Defendant's testimony is prohibited as irrelevant and highly prejudicial under Rule 401 and Rule 403. The Court's ruling on this Motion is deferred.

> **6.     Motion to preclude the defense from using a judicial finding to impeach the testimony of Ramsey County Medical Examiner Michael McGee**

In its Motion in Limine No. 7, The Government moves this Court for an order prohibiting Defendant from introducing Judge Peter M. Irvine's Order in <u>State of Minnesota v. Michael Hansen</u>, Court Case No. 21-KX-04-001222, and/or from using or referring to Judge Irvine's Order in any way.  (Govt.'s Mot. in Limine [Doc. No. 92] at 1.) The Government explains that Judge Irvine found that Dr. McGee's testimony at trial was "false or incorrect."  (<u>See</u> <u>id.</u>)  The Court grants the Government's Motion.

> **a.     State Court Order is Inadmissible**

Generally, judicial findings of fact, such as the <u>Hansen</u> Order, are hearsay; and thus, are inadmissible.  Although the United States Court of Appeals for the Eighth Circuit has not explicitly ruled on this issue, it noted in <u>United States v. Jeanpierre</u> that "[a] majority of our sister circuits to consider the issue have held 'that judicial findings of

fact are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists.'"  636 F.3d 416, 423 (8th Cir. 2011) (citing United States v. Sine, 493 F.3d 1021, 1036 (9th Cir. 2007); Herrick v. Garvey, 298 F.3d 1184, 1191–92 (10th Cir. 2002); United States v. Jones, 29 F.3d 1549, 1554 (11th Cir. 1994); Nipper v. Snipes, 7 F.3d 415, 417 (4th Cir. 1993)).  But see United States v. Dawson, 434 F.3d 956, 959 (7th Cir. 2006) (finding that the decision whether to allow a witness to be cross-examined about a prior judicial determination that he was not credible is confided to the discretion of the trial judge and that such questioning is not barred by Federal Rule of Evidence 608(b), which proscribes the use of extrinsic evidence to undermine a witness's character for truthfulness).

Applying the majority rule to this case, the Court finds that the Hansen Order is a judicial finding of fact that is hearsay, and is inadmissible.  Moreover, according to Federal Rule of Evidence 608(b), "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  Fed. R. Evid. 608(b).  As the Hansen Order is a judicial finding of fact that constitutes "extrinsic evidence," the Court finds that Rule 608(b) serves as an additional basis for the Court's ruling.  See Dawson, 434 F.3d at 958–59 (holding that if a lawyer sought to introduce into evidence a judge's finding in another case then "[t]hat would be 'extrinsic evidence' and would be barred by Rule 608(b)").

### b.    References to Judge Irvine's Order are Inadmissible

The Court also holds that Defendant is precluded from referencing Judge Irvine's Order in any argument or during witness questioning.  Rule 608(b) states that the Court

"may on cross-examination, allow . . . [inquiry into extrinsic evidence if it is] probative of the [witness's] character for truthfulness or untruthfulness."  Fed. R. Evid. 608(b). Here, Judge Irvine previously concluded that Dr. McGee's expert opinion was not credible given additional evidence that was presented in the state case.  Judge Irvine's Order did not take issue with Dr. McGee's truthfulness per se.  Rather, Judge Irvine only concluded that Dr. McGee's analysis was incorrect given the totality of the evidence. Because Rule 608(b) only allows a Court to use its discretion to admit cross-examination questioning that pertains to a witness's truthfulness, the Court finds that Defendant may not present argument or questioning about the Hansen Order.

Furthermore, the Court holds that pursuant to Federal Rule of Evidence 403, the probative value of any reference to the Hansen Order is substantially outweighed by its prejudicial effect.  See Fed. R. Evid. 403.  The Hansen case involved a young girl, whom Dr. McGee concluded died because of blunt force trauma to the head.  The facts underlying the Hansen case are unrelated to the facts underlying the victim's alleged cause of death in this case.  Thus, the probative value of any reference to the Hansen Order is minimal at most.  In contrast, the Court finds that references to the Hansen Order will unfairly prejudice Dr. McGee and mislead the jury.  See Sine, 493 F.3d at 1031 (explaining that "a line of questioning that repeatedly incorporates inadmissible evidence can be just as improper as the direct admission of such evidence."); United States v. Hall, 989 F.2d 711, 716–17 (4th Cir. 1993) (noting that by "proceed[ing] to read the [inadmissible hearsay] statement to the jury under the guise of cross-examining . . . [t]he government's use of [the] unauthenticated statement violated Fed. R. Evid. Rule 802");

16

United States v. Lopez, 944 F.2d 33, 38 (1st Cir. 1999) (explaining that "while potentially probative of the trustworthiness of the officer's testimony, the credibility assessment made by the presiding judge at an unrelated trial would have entailed a grave risk that the jury might abnegate its exclusive responsibility to determine the credibility of the testimony given by the officer at appellant's trial").  Therefore, this Motion is granted.

### C.   Defendant's Motions in Limine

#### 1.   Motion to redact the Indictment to exclude reference to the Grand Jury and Foreperson

In his Motion in Limine No. 1, Defendant seeks redaction of the Indictment to exclude reference to the Grand Jury and Foreperson.  (Def.'s Motions in Limine [Doc. No. 69] ("Def.'s MIL") ¶ 1.)  When a copy of an indictment is provided to the jury, it is typically done so in its original form.  Defendant has presented no special circumstances warranting different treatment in this case.  Accordingly, this Motion is denied.

#### 2.   Motion to preclude the Government from referring to the act as "murder"

In his Motion in Limine No. 2, Defendant seeks to preclude the Government from referring to the alleged act as "murder" because the term invades the province of the jury. (Def.'s MIL ¶ 2.)  The Court finds that Defendant's concerns will be adequately addressed by the jury instructions, which will clearly state that the attorneys' arguments are not evidence.  Therefore, this Motion is denied.

### 3. Motion to exclude prior accusations or allegations that Defendant sold drugs

In his Motion in Limine No. 3, Defendant seeks to exclude, pursuant to Federal Rules of Evidence 401 and 403, evidence of prior accusations or allegations that Defendant sold drugs. (Def.'s MIL ¶ 3.) At the pre-trial conference, the Government agreed not to offer such evidence. Accordingly, this Motion is denied as moot.

### 4. Motions to exclude improper character evidence regarding hearsay allegations that Defendant has a propensity for violence, to exclude alleged hearsay statements of Defendant and Ms. Clark before December 30, 2013, and to exclude or limit evidence of prior bad acts

In its Trial Brief, the Government discussed its intent to introduce: (1) statements made by Defendant and Ms. Clark regarding their relationship; (2) an incident of alleged domestic abuse that occurred in December 2003 when Defendant allegedly pushed Ms. Clark down the stairs; (3) an incident of domestic abuse that occurred in November 2007 that led to Defendant's conviction for fifth-degree domestic assault; (4) a series of events that occurred in June 2013 and involved threats made by Defendant toward Ms. Clark and Ms. Clark obtaining an order for protection; and (5) "other evidence" of Defendant's and Ms. Clark's "volatile relationship." (Govt.'s Tr. Br. [Doc. No. 75] at 10–17.) The Government argues that: (1) statements made by Ms. Clark and Defendant about their relationship are not hearsay because they would be introduced to show motive and to show effect on the listener, (see id. at 10); (2) evidence of the December 2003 incident is intrinsic because it provides context for the December 2013 events, (see id. at 13); (3) all of the evidence of prior bad acts against Ms. Clark is admissible under Rule 404(b) because it is

relevant to Defendant's motive and intent to control Ms. Clark, is similar in kind and close in time to the crime charged, will be proven by a preponderance of the evidence through witness testimony and court documents, and is not unfairly prejudicial, (see id. at 14–17).

Defendant's Motions in Limine Nos. 4 through 6 and 12 are all aimed at excluding this evidence.  In his Motion in Limine No. 4, Defendant seeks to exclude, pursuant to Federal Rule of Evidence 404, character evidence regarding hearsay allegations that Defendant has a propensity for violence.  (Def.'s MIL ¶ 4.)  In Motion in Limine No. 5, Defendant seeks to exclude alleged hearsay statements of Defendant before December 30, 2013, or an order requiring that the Government give notice regarding its intent to offer such statements and notice of which exception to the Federal Rules of Evidence applies.  (Id. ¶ 5.)  Similarly, in Motion in Limine No. 6, Defendant seeks to exclude alleged hearsay statements of Ms. Clark before December 30, 2013, or an order requiring that the Government give notice regarding its intent to offer such statements and notice of which exception to the Federal Rules of Evidence applies.  (Id. ¶ 6.)  And, in Motion in Limine No. 12, Defendant seeks to exclude or limit evidence of prior bad acts.  (Def.'s Mot. in Limine to Exclude or Limit Evid. of Prior Bad Acts [Doc. No. 77] at 1.)

In the latter Motion, which seems to explain the bases for the other three, Defendant first argues that evidence of the December 2003 incident must be excluded because, contrary to the Government's assertions, Ms. Clark repeatedly stated at the time of the incident that she accidentally fell down the stairs.  (See id. at 4 & App'x A.)  Consequently, Defendant argues, any of her subsequent statements would be inadmissible hearsay because they would be testimonial, and the required preponderance of the evidence standard is not

met.  (See id. at 5–6.)  Defendant also argues that the theory that Ms. Clark held that

incident over Defendant and threatened to tell the truth is implausible because there was an

intervening conviction for domestic assault.  (See id. at 7.)  Finally, Defendant contends that

the probative value of the December 2003 incident is outweighed by the likelihood of

prejudice and confusion.  (See id. at 7–8.)

Defendant next argues that the November 2007 and various June 2013 incidents lack

relevance in light of Defendant's and Ms. Clark's "mutual dysfunction," and that related

evidence would be prejudicial.  (See id. at 8–12.)  In the event that the Court permits

evidence of these prior acts, however, Defendant argues that rules of completeness require

that evidence of both Defendant's and Ms. Clark's prior acts be permitted.  (See id. at 10–

12.)  Finally, as for evidence of Defendant's and Ms. Clark's "volatile relationship,"

Defendant asserts that such testimony should be limited to general terms so as not to invite a

prolonged back-and-forth between the parties.  (See id. at 12.)

The Court agrees in part with both the Government and Defendant.  First, evidence

regarding the December 2003 incident is precluded.  The evidence is not intrinsic, as the

Government contends, because it does not "provide a 'total picture' of the charged crime."

United States v. Johnson, 463 F.3d 803, 808 (8th Cir. 2006) (citation omitted).  Rather, the

contemporaneous evidence demonstrates that Ms. Clark insisted she fell down the stairs and

was not pushed.  Moreover, the theory that she held this incident over Defendant, thereby

providing him with a motive to kill her, is too tenuous in light of the ten years that passed

between that incident and December 2013, and in light of Defendant's intervening

conviction for domestic assault.  For these reasons, the December 2003 incident also is not

admissible under Rule 404(b) because its relevance is questionable, it is not close in kind or time to the crime charged, it is not supported by a preponderance of the evidence, and its potential prejudice (requiring a mini-trial on a collateral issue) substantially outweighs its probative value.

Second, evidence regarding the November 2007 and June 2013 incidents, and of Defendant's and Ms. Clark's "volatile relationship," is admissible under Rule 404(b) as evidence of motive or intent in light of Defendant's statements on December 30, 2013 (i.e., "I'm sick of the shit she put me through" and "She's been nothing but cruel to me").  The incidents are relevant and close in kind and time to the crime charged (i.e., acts of violence against Ms. Clark within the preceding six years or six months, respectively), are supported by a preponderance of the evidence (i.e., court documents), and have probative value that outweighs the potential prejudice.  That being said, to minimize the prejudice that might result from a prolonged back-and-forth regarding the nature of Defendant's and Ms. Clark's relationship, and to prevent admission of improper reputation evidence under Rule 608, testimony regarding the "volatile" nature of the relationship must be limited to general terms.  Moreover, if the evidence described in this paragraph is proffered, it will be permitted completely.  For example, should the Government introduce evidence relating to the November 2007 incident, the June 2013 incidents, or the volatility of the relationship, Defendant may proffer evidence of Ms. Clark's related prior acts in order to provide a complete picture.  Finally, the Government must give prior notice to Defendant of its intent to offer such evidence, including which exception to the Federal Rules of Evidence applies.

For these reasons, Defendant's Motions in Limine Nos. 4 through 6 and 12 are granted in part and denied in part.

### 5. Motion to exclude evidence of prior convictions should Defendant decide to testify

In his Motion in Limine No. 7, Defendant seeks to exclude, in accordance with Federal Rule of Evidence 609(a), evidence of prior convictions should Defendant decide to testify.  (Def.'s MIL ¶ 7.)  At the pre-trial conference, the Government agreed that it would comply with Rule 609(a).  Accordingly, this Motion is denied as moot.

### 6. Motion to sequester all witnesses, including all but one case agent for both the Government and Defendant

In his Motion in Limine No. 8, Defendant seeks an order sequestering all witnesses, including all but one case agent for the Government and one case agent for Defendant. (Def.'s MIL ¶ 8.)  At the pre-trial conference, counsel for the Government and Defendant agreed that all witnesses would be sequestered in accordance with Defendant's request, except that the Government would be allowed two case agents.  Therefore, this Motion is denied as moot.

### 7. Motion to direct the Government to admonish its witnesses regarding inadmissible evidence

In his Motion in Limine No. 9, Defendant seeks an order directing the Government to admonish its witnesses regarding inadmissible evidence in order to avoid accidental testimony that would necessitate a corrective instruction.  (Def.'s MIL ¶ 9.)  At the pre-trial conference, counsel for the Government and Defendant agreed that they would each

admonish their witnesses in accordance with Defendant's request.  Therefore, this Motion is denied as moot.

### 8.     Motion to allow fifteen minutes of attorney voir dire

In its Motion in Limine No. 10, Defendant requests fifteen minutes for attorney-conducted voir dire.  (Def.'s MIL ¶ 10.)  This Motion is granted.  The Court will allow fifteen minutes of attorney-conducted voir dire for both the Government and Defendant.

### 9.     Motion to exclude expert witnesses for lack of sufficient notice

In his Motion in Limine No. 11, Defendant seeks to exclude the expert testimony of Dr. Daniel Smith and Dr. Thomas Rollie, who are expected to testify regarding their medical treatment of Ms. Clark following an incident that occurred in December 2003. (Def.'s Mot. in Limine to Exclude Expert Witnesses for Lack of Sufficient Notice [Doc. No. 76] at 1.)  Defendant argues that their testimony should be precluded because they were not properly noticed as expert witnesses.  (Id.)  In light of the Court's ruling as to Defendant's Motion in Limine No. 12, in which evidence related to the December 2003 incident is precluded, this Motion is denied as moot.

### D.     Defendant's Proposed Jury Instruction Regarding Intoxication

In his Request for Instructions to the Jury, Defendant proposed the following Instruction No. 15 regarding intoxication:

> The fact that Mr. Jones may have been under the influence of a controlled substance may make it impossible for him to act willfully, deliberately, intentionally or to act with callous and wanton disregard for human life, that is, to act with malice aforethought in causing the death of Shalonda Sioux Clark.

Evidence that Mr. Jones acted while under the influence of a controlled substance may be considered in deciding whether or not he acted with malice aforethought, or with the intent to kill, as charged in the indictment and in the included offense.

If the evidence in the case leaves you, the jury, with a reasonable doubt as to whether or not Charles Jones, because of the influence of a controlled substance, had the ability to form, malice aforethought or the intent to kill, it should acquit Mr. Jones.

(Def.'s Request for Instructions to the Jury [Doc. No. 67] at Instruction No. 15 (citing Fed. Jury Prac. and Instructions § 19:05 (6th ed.); United States v. Lilly, 512 F.2d 1259 (9th Cir. 1975)).)  The Government argues that such an instruction, while applicable to a specific-intent crime, is not applicable to a general-intent crime like second-degree murder and should, therefore, be rejected in this case.  (Govt.'s Mem. of Law Regarding Def.'s Proposed Voluntary Intoxication Instruction [Doc. No. 78] at 1, 4.)

The Court agrees with the Government.  "Voluntary intoxication . . . is not a defense to a crime of general intent."  United States v. Lavallie, 666 F.2d 1217, 1219 (8th Cir. 1981) (citations omitted).  And, second-degree murder under 18 U.S.C. § 1111 is a crime of general intent.  See United States v. Jewett, 438 F.2d 495, 499 (8th Cir. 1971) (citing Kane v. United States, 399 F.2d 730, 736 (9th Cir. 1968)); United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000) (citation omitted).  Accordingly, the Court rejects Defendant's proposed Instruction No. 15.

III.   **ORDER**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED THAT:**

1.   The Government's Motion in Limine to preclude the defense, in the presence of the jury, from offering or referring to hearsay statements of Defendant [Doc. No. 70] is **GRANTED**;

2.   The Government's Motion in Limine to limit defense cross-examination of any witness regarding prior bad acts or convictions of the witness or references thereto [Doc. No. 70] is **DEFERRED**;

3.   The Government's Motion in Limine to sequester potential witnesses except case agents [Doc. No. 70] is **DENIED AS MOOT**;

4.   The Government's Motion in Limine to preclude Defendant, in the presence of the jury, from referring to the potential penalty Defendant faces if convicted [Doc. No. 70] is **DENIED AS MOOT**;

5.   The Government's Motion in Limine to preclude "reverse" 404(b) evidence [Doc. No. 71] is **DEFERRED**;

6.   The Government's Motion in Limine to preclude the defense from using a judicial finding to impeach the testimony of Ramsey County Medical Examiner Michael McGee [Doc. No. 92] is **GRANTED**;

7.   Defendant's Motion in Limine to redact the Indictment to exclude reference to the Grand Jury and Foreperson [Doc. No. 69] is **DENIED**;

8.   Defendant's Motion in Limine to preclude the Government from referring to the act as "murder" [Doc. No. 69] is **DENIED**;

9.   Defendant's Motion in Limine to exclude prior accusations or allegations that Defendant sold drugs [Doc. No. 69] is **DENIED AS MOOT**;

10.  Defendant's Motion in Limine to exclude improper character evidence regarding hearsay allegations that Defendant has a propensity for violence [Doc. No. 69] is **GRANTED IN PART AND DENIED IN PART**;

11.  Defendant's Motion in Limine to exclude alleged hearsay statements of Defendant before December 30, 2013, or to require notice be given by the

Government regarding its intent to offer such evidence [Doc. No. 69] is **GRANTED IN PART AND DENIED IN PART**;

12.   Defendant's Motion in Limine to exclude alleged hearsay statements of Shalonda Clark before December 30, 2013, or to require notice be given by the Government regarding its intent to offer such evidence [Doc. No. 69] is **GRANTED IN PART AND DENIED IN PART**;

13.   Defendant's Motion in Limine to exclude evidence of prior convictions should Defendant decide to testify [Doc. No. 69] is **DENIED AS MOOT**;

14.   Defendant's Motion in Limine to sequester all witnesses, including all but one case agent for both the Government and Defendant [Doc. No. 69] is **DENIED AS MOOT**;

15.   Defendant's Motion in Limine to direct the Government to admonish its witnesses regarding inadmissible evidence [Doc. No. 69] is **DENIED AS MOOT**;

16.   Defendant's Motion in Limine to allow fifteen minutes of attorney voir dire [Doc. No. 69] is **GRANTED**;

17.   Defendant's Motion in Limine to exclude expert witnesses for lack of sufficient notice [Doc. No. 76] is **DENIED AS MOOT**;

18.   Defendant's Motion in Limine to exclude or limit evidence of prior bad acts [Doc. No. 77] is **GRANTED IN PART AND DENIED IN PART**; and

19.   Defendant's proposed jury instruction regarding intoxication is **REJECTED**.


Dated:  March 4, 2015                    s/Susan Richard Nelson
                                         SUSAN RICHARD NELSON
                                         United States District Judge